UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------
RYAN O'DELL,                                       :
                                                   :
       Plaintiff,                              : Civil Action No. 22-cv-3427
                                                   :
v.                                                 : **COMPLAINT FOR VIOLATIONS OF**
                                                   : **SECTIONS 14(a) AND 20(a) OF THE**
ANAPLAN, INC., FRANK CALDERONI,                    : **SECURITIES EXCHANGE ACT OF**
DAVID CONTE, SANDESH PATNAM,                       : **1934**
SUSAN L. BOSTROM, ROBERT E.                        :
BEAUCHAMP, SURESH VASUDEVAN,                       : **JURY TRIAL DEMANDED**
YVONNE WASSENAAR, ALLAN                            :
LEINWAND, and BROOKE MAJOR-REID,                   :
                                                   :
       Defendants.                             :
------------------------------------------------------ :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Anaplan, Inc. ("Anaplan or the "Company") and the members Anaplan's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Anaplan by affiliates of Thoma Bravo, L.P. ("Thoma Bravo")

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 21, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Alpine Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Alpine Parent, LLC ("Parent"), will merge with and into Anaplan with Anaplan surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 20, 2022 (the "Merger Agreement"), each Anaplan stockholder will receive $66.00 in cash (the "Merger Consideration") for each Anaplan share owned. Merger Sub and Parent are both affiliates of Thoma Bravo.

1. As discussed below, Defendants have asked Anaplan's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Qatalyst Partners LP ("Qatalyst" and with Goldman Sachs, the (Financial Advisors")) in support of their fairness opinions.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Anaplan's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Anaplan stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Frank Calderoni has served as a member of the Board since January 2017 and is the Chairwoman and Chief Executive Officer of the Company.

9. Individual Defendant David Conte has served as a member of the Board since February 2016.

10. Individual Defendant Sandesh Patnam has served as a member of the Board since December 2015.

11. Individual Defendant Susan L. Bostrom has served as a member of the Board since September 2017.

12. Individual Defendant Robert E. Beauchamp has served as a member of the Board since July 2018.

13. Individual Defendant Suresh Vasudevan has served as a member of the Board since April 2019.

14. Individual Defendant Yvonne Wassenaar has served as a member of the Board since November 2019.

15. Individual Defendant Allan Leinwand has served as a member of the Board since February 2020.

16. Individual Defendant Brooke Major-Reid has served as a member of the Board since November 2020.

17. Defendant Anaplan is a Delaware corporation and maintains its principal offices at 50 Hawthorne Street, San Francisco, California 94105.  The Company's stock trades on the New York Stock Exchange under the symbol "PLAN."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

20. Anaplan provides a cloud-based connected planning platform to connect organizations and people in the Americas, Europe, the Middle East, Africa, and the Asia Pacific. Its platform in-memory data storage and calculation capabilities deliver calculations of data in real time and provide a single source of information for planning, ensuring the consistency, quality, and integrity of the data utilized across the enterprise. The Company delivers its application over the Internet as a subscription service using a software-as-a-service model, as well as offers professional services related to implementing and supporting its application. It serves banking,

capital markets, consumer products, healthcare, insurance, life science, media, professional services, retail, technology, telecom, and transportation industries, as well as government agencies. Anaplan was founded in 2008 and is headquartered in San Francisco, California.

21. On March 20, 2022, the Company announced the Proposed Transaction:

> SAN FRANCISCO--(BUSINESS WIRE)-- Anaplan, Inc. ("Anaplan" or the "Company") (NYSE: PLAN), provider of a leading cloud-native platform for orchestrating business performance, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, for $66.00 per share in an all-cash transaction valued at approximately $10.7 billion. The offer represents a premium of approximately 46% to the volume weighted average price of Anaplan stock for the five days ending March 18, 2022. Upon completion of the transaction, Anaplan will become a privately held company.
>
> "We are thrilled to partner with Thoma Bravo to build on the strength of our innovative platform and capitalize on the massive opportunity and incredible demand we are seeing," said Frank Calderoni, Chairman & Chief Executive Officer. "This is a clear validation of our team's outstanding work and the start of an exciting new chapter for Anaplan, our customers, and our partner ecosystem. We are confident that Thoma Bravo's resources and insights will help us accelerate and scale our growth strategy."
>
> "Anaplan is a clear leader in Connected Planning, solving critical business priorities for the world's largest enterprises as they implement strategic and complex digital transformations," said Holden Spaht, a Managing Partner at Thoma Bravo. "We have followed Anaplan for years and have seen the incredible value they bring customers through their best-in-class planning platform. We look forward to leveraging Thoma Bravo's extensive operational and investment expertise in enterprise software to support Anaplan in its future growth."
>
> "Anaplan has built a tremendously successful business through product innovation and a rigorous approach to delivering value for their customers and partner ecosystem," said Tara Gadgil, a Partner at Thoma Bravo. "We look forward to working closely with Anaplan's talented and experienced team to continue delivering cloud-native SaaS solutions at scale."

Thoma Bravo will use its significant experience supporting industry-leading, growing software franchises, as well as its financial and operational resources, to accelerate Anaplan's strategy. Anaplan's best-in-class innovative platform, time to value, and brand reputation will be priorities for Thoma Bravo. The intention is to attract and retain customers, employees, and partners to continue leading the large and expanding Connected Planning segment.

**Transaction Details**

The transaction, which was unanimously approved by the Anaplan Board of Directors, is expected to close in the first half of 2022 subject to customary closing conditions, including approval by Anaplan stockholders and regulatory approval. Upon completion of the transaction, Anaplan's common stock will no longer be listed on the New York Stock Exchange.

**Advisors**

Goldman Sachs & Co. LLC and Qatalyst Partners are acting as financial advisors and Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP and Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal advisors to Anaplan. Kirkland and Ellis LLP is serving as legal counsel to Thoma Bravo. Financing for the transaction is being provided by Owl Rock Capital, Blackstone Credit, Golub Capital and Apollo Global Management through their respective managed funds.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Anaplan's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

23. On April 21, 2022, Anaplan filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Anaplan management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Anaplan management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Operating Income; Unlevered Free Cash Flow, and Unlevered Free Cash Flow (Less Stock Based Compensation and

Excluding Cash Tax Savings from NOLs), but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Anaplan; (ii) the inputs and assumptions underlying the illustrative range of terminal year multiples ranging from 30.0x to 40.0x; (iii) the net present value of cash tax savings from federal net operating losses; (iv) the inputs and assumptions underlying the use of the range of discount rates of 11.0% to 13.0%; (v) the Company's weighted average cost of capital; (vi) the inputs and assumption underlying the NTM revenue multiples ranging from 4.1x to 5.4x; (vii) the net debt of Anaplan as of January 31, 2022; and (viii) the number of fully diluted outstanding shares of Anaplan.

30. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose (i) the inputs and assumptions underlying the NYM revenue multiples of 8.0x to 12.0x; (ii) the Company's forecasted net debt as of January 31, 2023 to 2025; (iii) the number of projected fully diluted shares of Anaplan common stock as of January 31 of each of the years 2023 to 2025; (iv) the inputs and assumptions underlying the illustrative discount rate of 11.8%.

31. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected by Goldman Sachs in the analysis.

32. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the acquisition transactions reviewed by Goldman Sachs and the premia paid in each.

33. With respect to Goldman Sachs' *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics from each company selected by Goldman Sachs in the analysis.

34. With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for Anaplan; (ii) the inputs and assumptions underlying the NTM estimated UFCF multiples ranging from 17.5x to 30.0x; (iii) the implied net present value of estimated federal tax savings due to its net operating losses for the fiscal years 2032 and beyond; (iv) the inputs and assumptions underlying the use of the range of discount rates of 11.5% to 15.0%; (v) the Company's weighted average cost of capital; (vi) the value of Anaplan's finance leases as of January 31, 2022; (vii) the cash and cash equivalents of Anaplan as of January 31, 2022; and (viii) the number of fully diluted outstanding shares of Anaplan.

35. With respect to Qatalyst's *Illustrative Selected Companies Analysis*, the Proxy Statement fails to disclose the financial metrics of each company selected by Qatalyst in the analysis.

36. With respect to Qatalyst's *Illustrative Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics of each transaction selected by Qatalyst in the analysis.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Anaplan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Anaplan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Anaplan, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Anaplan, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 27, 2022

**MELWANI & CHAN LLP**

By: _/s/ Gloria Kui Melwani_
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620

                                    Email: gloria@melwanichan.com

                                    *Attorneys for Plaintiff*